Kacy C. Manahan, Esq. (N.J. Atty. No. 275122018)
**Delaware Riverkeeper Network**
925 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, and MAYA K. VAN ROSSUM, the DELAWARE RIVERKEEPER, <br><br> Plaintiffs, <br><br> v. <br><br> DELAWARE RIVER BASIN COMMISSION and DELAWARE RIVER PARTNERS LLC, <br><br> Defendants. | No.: <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

TO THE HONORABLE COURT:

Plaintiffs Delaware Riverkeeper Network and Maya K. van Rossum, the Delaware Riverkeeper, by and through their undersigned counsel, allege as follows:

### <u>INTRODUCTION</u>

1.      In this action, Plaintiffs Delaware Riverkeeper Network and Maya K. van Rossum, in her capacity as the Delaware Riverkeeper and leader of the organization (collectively, "DRN"), 925 Canal Street, Suite 3701, Bristol,

Pennsylvania, challenge the September 10, 2025 extension of a docket issued by the Delaware River Basin Commission ("DRBC" or "Commission"), 25 Cosey Road, West Trenton, New Jersey.

2.    The Commission issued Docket 2017-009-2 ("Dock 2 Docket") to Delaware River Partners LLC ("DRP"), 200 North Repauno Avenue, Gibbstown, New Jersey, pursuant to Section 3.8 of the Delaware River Basin Compact (the "Compact"), for a dredging and deep-water berth construction project ("Dock 2 Project"), at DRP's Gibbstown Logistics Center ("GLC") in Greenwich Township, Gloucester County, New Jersey.

3.    The Dock 2 Docket, originally issued June 12, 2019, was to expire by its terms on June 12, 2022, but was extended an additional three years by the Commission on September 8, 2022, pursuant to the Commission's Rules of Practice and Procedure ("Rules"). The Dock 2 Docket's extended expiration date was thus June 12, 2025.

4.    On March 25, 2025, DRP requested a second extension of their Docket 2017-009-2 pursuant to the Commission's Rules. *See* 18 C.F.R. § 401.41(a).

5.    The Commission approved DRP's request on September 10, 2025, extending the Dock 2 Docket until June 12, 2030.

6.     The Commission's action was unlawful because the Rules do not provide for a second extension. Section 401.41(a) makes clear that approvals are subject to a single extension.

7.     Even if a second extension were permitted by the Rules, the Commission's action was unlawful because DRP's request failed to meet the criteria for an extension because of the following material changes to the Dock 2 Project: (1) DRP's transloading of liquefied natural gas ("LNG") from land to ocean-going vessels can now only be achieved by using hundreds and hundreds of trucks, as LNG transportation by rail is not permitted; and (2) the project site's condition has changed substantially due to reconfiguration of the upland infrastructure and the currently-pending construction of a vast network of underground storage cavern systems at the GLC.

8.     The Commission's action was additionally unlawful because the project sponsor has not been diligently pursuing the project as required by the Rules, as DRP cites "market conditions and other factors" as the reason for not constructing the Dock 2 Project. In other words, DRP is voluntarily choosing not to construct the Dock 2 Project.

9.     Because criteria listed in 18 C.F.R. § 401.41(a)(1) were not satisfied, the Commission's extension of the Dock 2 Docket was arbitrary, capricious, and contrary to the Compact and its implementing regulations.

10.    Until Defendants comply with the requirements of the Compact, Plaintiffs will seek temporary, preliminary, or permanent injunctions against any activities in furtherance of the Dock 2 Project, and any other such relief as Plaintiffs deem appropriate.

11.    This relief is necessary to preserve the status quo and to forestall irreparable injury to the environment and to Plaintiffs' interests.

## PARTIES

*Plaintiffs*

12.    Plaintiff Delaware Riverkeeper Network was established in 1988 to protect and restore the Delaware River, its tributaries and habitats. To achieve these goals, Delaware Riverkeeper Network organizes and implements stream restoration projects, volunteer water quality and ecosystem monitoring, educational programs, community technical assistance projects, environmental advocacy initiatives, community/member action and involvement projects, recreational activities, and environmental litigation throughout the entire Delaware River watershed, including the Delaware Estuary and Delaware Bay, and at a state or national level when necessary to advance the organization's mission. The watershed includes portions of New Jersey, New York, Pennsylvania, and Delaware. Delaware Riverkeeper Network is a not-for-profit membership organization with over 29,000 members, including members who

live in, work in, and/or recreate in the State of Delaware, the State of New Jersey, the State of New York, and the Commonwealth of Pennsylvania. Delaware Riverkeeper Network members fish, canoe, kayak, boat, swim, birdwatch, hike, bike, and participate in other recreational activities in the Lower Delaware River Watershed, including in the State of New Jersey. Delaware Riverkeeper Network undertakes numerous activities and initiatives that take place in, directly benefit from, and/or directly impact State of New Jersey waters, habitats, ecosystems, and communities.

13.    Plaintiff the Delaware Riverkeeper, Maya K. van Rossum, works for the protection of the waterways in the Delaware River Watershed. The Delaware Riverkeeper advocates and works for the protection and restoration of the ecological, recreational, commercial and aesthetic qualities of the Delaware River, its estuary, bay, tributaries, and habitats. The Delaware Riverkeeper regularly visits the Delaware River for professional reasons. The Delaware Riverkeeper is the chief executive officer of the Delaware Riverkeeper Network.

14.    Delaware Riverkeeper Network brings this action on behalf of its members, including many who live in the vicinity of the Delaware River and Estuary, or rely on them for recreational, professional, personal, or aesthetic uses, and will suffer injuries from the ecological and/or economic damage and the safety concerns caused by the Dock 2 Project.

*Defendants*

15.    Defendant Delaware River Basin Commission is an agency and instrumentality created by the signatory parties to the Compact. It consists of the four governors of Delaware, New Jersey, New York, and Pennsylvania, *ex officio*, and the Division Engineer, North Atlantic Division, U.S. Army Corps of Engineers, who serves as the federal representative. The Commission is charged with conserving and managing the water resources of the Delaware River and its watershed.

16.    Defendant Delaware River Partners, LLC is a limited liability company formed under the laws of the state of Delaware with its primary place of business at 200 N. Repauno Avenue, Gibbstown, New Jersey 08027. DRP is majority owned by Fortress Transportation and Infrastructure Investors LLC, which owns and acquires infrastructure and equipment for the transportation of goods and people. DRP sought and received approval from the Commission for the Dock 2 Project.

## JURISDICTION

17.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) by virtue of the Compact, which reads, in relevant part: "The United States district courts shall have original jurisdiction

of all cases or controversies arising under the Compact . . . ." Compact, 75 Stat. 688, Pub. L. 87-328, § 15.1(p) (Sept. 27, 1961).

18.    This Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2202.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because all Defendants reside in the District of New Jersey. Venue is also proper in this District because Plaintiffs and a substantial number of the members of Plaintiff organization Delaware Riverkeeper Network reside, work, and/or recreate in the District. Venue is also proper in this District because the GLC and proposed Dock 2 Project are located in Greenwich Township in New Jersey, and the adverse effects of these facilities will substantially affect New Jersey.

20.    DRP is subject to the general personal jurisdiction of this Court because its principal place of business is located in Gibbstown, Greenwich Township, New Jersey. The joinder of DRP in this action is thus proper.

21.    Furthermore, this Court has specific personal jurisdiction over DRP. In obtaining a docket from the Commission, and seeking extensions thereof—the ultimate determination of which DRP knew may be challenged in federal court— DRP submitted itself to specific jurisdiction in New Jersey where the

Commission is located, and where the actions that are the subject of the docket application are proposed to occur. The joinder of DRP in this case is thus proper.

22.    Plaintiffs have no adequate remedy at law. Unless this Court grants the requested relief, the Defendants' actions will continue to cause irreparable harm to the environment, to Plaintiffs, and to the public in violation of the Compact and the public interest. No monetary damages or other legal remedy could adequately compensate Plaintiffs or the public for these harms.

## STATUTORY FRAMEWORK GIVING RISE TO PLAINTIFFS' CLAIMS

*The Delaware River Basin Compact*

23.    In 1961, the states of Delaware, New Jersey, New York, the commonwealth of Pennsylvania, and the United States entered into the Compact, after "recogniz[ing] the water and related resources of the Delaware River Basin as regional assets vested with local, State, and National interests, for which [the signatory parties] have a joint responsibility . . ." Compact, Part I.

24.    Accordingly, the signatories sought to conserve, utilize, develop, manage, and control the water and related resources of the Basin "under a comprehensive multipurpose plan" in order to avoid the "splintering of authority and responsibilities" that existed among local, State, and Federal agencies at the time the Compact was created. *See id*.

25.    The Compact created the Commission as an "agency and instrumentality of the governments of the respective signatory parties," *id.* § 2.1, with jurisdiction to "have, exercise and discharge its functions, powers and duties within the limits of the basin . . . ." *Id.* § 2.7.

26.    The Compact further directs the Commission to "develop and adopt . . . a comprehensive plan for the immediate and long-range development and use of the water resources of the basin." *Id.* § 13.1.

27.    The Comprehensive Plan "is intended to describe the general characteristics of river basin development which the Commission finds to be in the public interest" and "provides . . . a flexible, growing and evolving general framework for the orderly development of the water and related resources of the basin." Comprehensive Plan, § I.A.d.

28.    Among the powers and duties of the Commission is the power and duty to review projects within the basin:

> No project having a substantial effect on the water resources of the basin shall hereafter be undertaken by any person, corporation or governmental authority unless it shall have been first submitted to and approved by the commission . . . . The commission shall approve a project whenever it finds and determines that such project would not substantially impair or conflict with the comprehensive plan and may modify and approve as modified, or may disapprove any such project whenever it finds and determines that the project would substantially impair or conflict with such plan.

Compact, § 3.8.

29.    The Commission implements the Compact and the Comprehensive Plan, in relevant part, through its Rules (codified at 18 C.F.R. Part 401) and its Water Code (codified at 18 C.F.R. Part 410).

30.    Article 3 of the Rules governs project review under Section 3.8 of the Compact. *See* 18 C.F.R. Part 401, Subpart C.

31.    If a project "may have a substantial effect on the water resources of the Basin," it must be "submitted to the Commission for a determination as to whether the project impairs or conflicts with the Comprehensive Plan . . . ." *Id.* §§ 401.34, 401.35(b).

32.    At the time the Commission issued the Dock 2 Docket, and at the time DRP sought its first extension, the Commission's Rules provided that approvals expire three years from the approval date. *Id.* § 401.41(a) (2023) (amended 2024).

33.    On June 5, 2024, the Commission amended its Rules to provide that approvals pursuant to Section 3.8 without an assigned expiration date would expire five years from approval absent an extension from the Commission. *Id*. § 401.41(a)(1).

34.    The amended Rules provide that the Commission may extend an approval for an additional period of up to five years. *Id*.

35.    A project sponsor must demonstrate the following criteria to obtain an extension: (1) there are no proposed material changes to the project as approved; (2) the condition of the project site has not changed in a manner important to determining whether the project would substantially impair or conflict with the Comprehensive Plan; (3) the Comprehensive Plan has not changed in a manner important to determining whether the project would substantially impair or conflict with the Comprehensive Plan; and (4) the project sponsor is diligently pursuing the project as shown by various pieces of supporting evidence. *See id*. § 401.41(a)(1)(i)–(iv).

36.    If the project sponsor fails to make these demonstrations, the Commission must deny the extension request. *Id.* § 401.41(a)(2).

## **FACTS GIVING RISE TO PLAINTIFF'S CLAIMS**

*Overview of the Dock 2 Project*

37.    DRP is in the process of developing the GLC, located at Block 8, Lots 1, 2, 3, 4, 4.01, and 4.02 in Greenwich Township, Gloucester County, New Jersey, commonly known as 200 North Repauno Avenue.

38.    The GLC is located on the site of the former DuPont Repauno facility, which was in use for over one hundred years for explosives manufacturing, anhydrous ammonia production, and the manufacturing of organic compounds.

11

39.    DuPont's operations ceased in 1986, and the site began remediation in 2002.

40.    The subject of this Complaint is the proposed Dock 2 Project, a new marine terminal consisting of two loading platforms, eight breasting dolphins, eleven mooring dolphins, walkways to provide access between the loading platforms and dolphins, a trestle supporting a one-lane vehicular roadway with adjacent pedestrian access and an internal pipe system for the transfer of bulk liquid product, including LNG, and mechanical dredging in the Delaware River.

*The Commission's Approval of the Dock 1 Docket*

41.    On August 8, 2017, DRP applied to the Commission requesting approval under Section 3.8 of the Compact of a dredging and deep-water berth construction project at the site of the GLC ("Dock 1 Project").

42.    The Dock 1 Project was approved by the Commission on December 13, 2017, and Docket No. D-2017-009-1 (the "Dock 1 Docket") was issued to DRP.

43.    The Dock 1 Project involved dredging 371,000 cubic yards of sediment from the Delaware River, demolishing an existing wharf and bulkhead, and constructing a new bulkhead, a pile-supported wharf structure, and six new stormwater outfalls.

*The Commission's Approval of the Dock 2 Docket*

44.    On March 11, 2019, DRP submitted another application for project review to the Commission pursuant to Section 3.8 of the Compact.

45.    The subject of that application, the proposed Dock 2 Project, is a deep-water facility for the export of bulk liquid products featuring two berths capable of loading liquids from either trucks or rail cars.

46.    In order to construct the Dock 2 Project, DRP would need to dredge approximately 665,000 cubic yards of sediment from the Delaware River, nearly twice as much as the Dock 1 Project, to a depth of 43 feet below mean lower low water.

47.    The berth structure would consist of a trestle pier, two loading platforms, eight breasting dolphins, eleven mooring dolphins, and walkways to provide access between platforms and dolphins.

48.    On May 24, 2019, the Commission published draft docket D-2017-009-2 and gave notice of a public hearing to be held on June 6, 2019, with written comments being accepted through June 7, 2019.

49.    DRN submitted comment letters to the Commission dated May 28, June 3, and June 7, 2019. Tracy Carluccio, Deputy Director, was also present and provided verbal comment on behalf of DRN at the Commission's June 6, 2019 hearing on the draft docket.

50.    On June 12, 2019, the Commission approved the Dock 2 Docket by unanimous vote.

*The Administrative Hearing*

51.    DRN requested a hearing pursuant to Article 6 of the Rules on July 11, 2019, to review the Commission's decision to approve the Dock 2 Docket on the basis that: the Commission failed to account for the cumulative impact of both Dock 1 and Dock 2 of the GLC; the Commission wrongfully approved the Dock 2 Docket despite DRP's lack of compliance with the Dock 1 Docket; the Commission had insufficient evidence to determine whether the Dock 2 Project complied with the Water Code; and that the Commission failed to give adequate public notice of the Dock 2 Project by omitting information relating to the proposed LNG transloading operations, among other reasons.

52.    On September 11, 2019, the Commission granted DRN's request for a hearing, finding that "an administrative hearing is desirable under the circumstances of this specific docket approval."

53.    Due to the COVID-19 pandemic, the hearing was postponed and conducted virtually from May 11 to May 20, 2020. Direct lay and expert testimony was provided through written declarations and reports, and the parties were given the opportunity to cross-examine during the virtual hearing.

54.    On July 21, 2020, the Hearing Officer issued his Report of Findings and Recommendations, concluding that DRN had failed to meet its evidentiary burden, and recommending that the Dock 2 Docket remain as previously approved by the Commission.

55.    On September 10, 2020, the Commission resolved to stay its approval of the Dock 2 Project pending the Commission's final determination resolving DRN's administrative appeal, to provide adequate time to review the evidentiary record generated by the hearing.

56.    On December 9, 2020, the Commission adopted the findings of the Hearing Officer with modifications and affirmed its June 12, 2019, approval of the Dock 2 Docket in a twenty-five-page opinion.

*Federal District Court Challenge*

57.    In January 2021, DRN filed a complaint against the Commission and DRP in this Court, seeking review of the Commission's decision to approve the docket. DRN argued that the Commission abused its discretion by acting contrary to the evidence in the record, by failing to consider the impacts of the GLC as a whole on the Comprehensive Plan, and by failing to adequately address PCB contamination.

58.    On March 21, 2023, the District Court upheld the Commission's approval as based on substantial evidence. *Del. Riverkeeper Network v. Del. River Basin Comm'n*, No. 21-cv-01108 (D.N.J. Mar. 31, 2023).

*First Extension of Approval*

59.    On June 2, 2022, DRP submitted to the Commission a request for a three-year extension of the Docket. At the time, unamended § 401.41(a) of the Rules provided that "[a]pproval by the Commission under these regulations shall expire three years from the date of Commission action unless prior thereto the sponsor has expended substantial funds (in relation to the cost of the project) in reliance upon such approval. An approval may be extended or renewed by the Commission upon application." 18 C.F.R. § 401.41(a) (2023) (amended 2024).

60.    DRP submitted its request, alleging that: 1) DRP had had expended substantial funds in relation to the cost of the project within three years following the Commission's approval; and 2) no changes to the project material to the Commission's approval had occurred or were proposed.

61.    On September 8, 2022, despite written comments by DRN in opposition to the extension, the Commission approved DRP's request for a three-year extension of the Docket, through June 12, 2025.

*Changes to the GLC and Dock 2 Project Since Docket Issuance*

62.     On September 11, 2020, DRP petitioned the Federal Energy Regulatory Commission ("FERC") for a declaratory order disclaiming FERC's jurisdiction over the GLC pursuant to the federal Natural Gas Act, 15 U.S.C. §§ 717–717z.

63.     If DRP's petition were denied and FERC asserted its jurisdiction under the Natural Gas Act, DRP would need to seek approval from FERC prior to constructing its LNG export facility at the GLC.

64.     On December 30, 2021, DRP was issued a permit by the New Jersey Department of Environmental Protection to construct 11,600 linear feet of a new double track rail loop intended to facilitate transloading from rail cars to Dock 2.

65.     On or about August 12, 2022, the New Jersey Department of Environmental Protection approved a minor technical modification to DRP's Waterfront Development and Flood Hazard Area permit that allowed for a reconfiguration of above-ground storage tanks for fossil fuel products.

66.     On November 30, 2021, a Special Permit issued to Energy Transport Solutions, LLC, by the Pipeline and Hazardous Materials Safety Administration ("PHMSA") allowing for the transportation of LNG by rail from Wyalusing, Pennsylvania, to the GLC, expired by its terms.

67.   On or about April 24, 2023, PHMSA denied Energy Transport Solutions, LLC's application for renewal of the special permit.

68.   On September 1, 2023, PHMSA suspended amendments to its Hazardous Materials Regulations that would allow for the transportation of LNG in rail tank cars nationwide. *See Hazardous Materials: Suspension of HMR Amendments Authorizing Transportation of Liquefied Natural Gas by Rail*, 88 Fed. Reg. 60,356 (Sept. 1, 2023).

69.   Accordingly, beginning September 1, 2023, it was not legally permissible to transport LNG by rail without a special permit, and there was no special permit that would allow transportation of LNG by rail to the GLC.

70.   On April 18, 2024, in the context of DRP's petition to FERC, FERC asked DRP whether it still intended to construct the LNG export facility given that LNG could no longer be transported by rail.

71.   DRP responded to FERC that it still intended to construct the LNG export facility because it could use various modes of delivery by truck to transload LNG onto ocean-going vessels.

72.   In a comment to FERC, Plaintiffs calculated that approximately 218,182 trucks would need to travel from Wyalusing to Gibbstown each day to export the average daily volume of LNG authorized for export from the GLC by the Department of Energy.

73.    On January 17, 2025, following a challenge by Plaintiffs and others, the U.S. Court of Appeals for the D.C. Circuit vacated PHMSA's rule allowing for the transportation of LNG by rail nationwide. *See Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170 (D.C. Cir. 2025).

74.    On June 23, 2025, PHMSA amended its regulations to conform with the D.C. Circuit's decision and to restore the text of its Hazardous Materials Regulations to the version that existed prior to the LNG by Rail Rule. *See Hazardous Materials: Liquefied Natural Gas by Rail*, 90 Fed. Reg. 26,455 (June 23, 2025).

75.    To Plaintiffs' information, knowledge, and belief, no entity has applied for or obtained a special permit to transport LNG by rail as of the date of this filing, and thus LNG cannot be transported by rail to the GLC.

76.    On April 16, 2025, the New Jersey Department of Environmental Protection posted a public notice and draft permit that would allow DRP to construct two new 640,000-barrel hard rock underground storage cavern systems including a central complex at the GLC, for the purpose of storing liquid-phase liquefied petroleum gas.

*2024 Rules Amendments*

77.    In June 2024, the Commission amended § 401.41(a) of its Rules. In relevant part, the amended section provides for an extension of an approval for

an additional period of up to five years, based upon a written request from the project sponsor accompanied by supporting documentation demonstrating that the following criteria have been met:

(i) No material changes to the project as approved are proposed;

(ii) The condition of the project site has not changed in a manner important to determining whether the project would substantially impair or conflict with the Commission's Comprehensive Plan;

(iii) The Commission's Comprehensive Plan has not changed in a manner important to determining whether the project would substantially impair or conflict with the Comprehensive Plan; and

(iv) The project sponsor is diligently pursuing the project as shown by its planning, construction or project operational activities, its project expenditures, its efforts to secure government approvals necessary for the project, or its active participation in appeals of government decisions on its applications for government approvals. The project sponsor is not required by this [subsection] to conduct activities that it is not legally authorized to conduct or that it demonstrates would be unreasonable for it to conduct before obtaining all necessary final government approvals. 18 C.F.R. § 401.41(a).

*Request for Second Extension under Amended Rule*

78.    On March 14, 2025, DRP submitted a second request for an extension of the Dock 2 Docket.

79.    In its request, DRP admitted that it had not begun work on the Dock 2 Project due to "market conditions and other factors."

80.    The Commission received 862 comments during the comment period on various issues including: process and procedure, material changes to the project, the docket holder's diligent pursuit of the project, health and safety hazards, water quality, aquatic life, economic impact, air quality, and environmental justice.

81.     DRN submitted comments to the Commission requesting that the Commission deny DRP's extension request on the basis that:

a. the Commission's Rules only provide for a single extension of a Section 3.8 approval;

b. even if a second extension were available, the Project itself and the site's condition had materially changed;

c. and DRP was not diligently pursuing the Project because it had all the necessary government approvals but declined to construct the Dock 2 Project primarily due to market conditions.

*The Commission's Extension of the Dock 2 Docket*

82.    On September 10, 2025, after considering public comments and materials submitted by DRP, the Commission found the following:

   a.  There have been no material changes to the Docket as approved by the Commission;

   b.  The condition of the Project site has not changed in a manner important to determining whether the project would substantially impair or conflict with the Commission's Comprehensive Plan;

   c.  The Commission's Comprehensive Plan has not changed in a manner important to determining whether the Project would substantially impair or conflict with the Comprehensive Plan; and

   d.  DRP has diligently pursued the Project within the meaning of Section 401.41(a).

83.    On September 10, 2025, the Commission unanimously voted to approve DRP's second extension request, based on its finding that DRP satisfied the conditions of 18 C.F.R. § 401.41(a).

## COUNT I

### Violation of the Compact and its Regulations by Providing Second Extension of Dock 2 Docket

84.    Plaintiffs hereby incorporate the allegations in paragraphs 1 through 83 as if fully stated herein.

85.    The Commission's Rules do not provide for a second extension of a Section 3.8 approval. Approvals are subject to a single extension.

86.    The Commission's approval of DRP's second extension request violates the plain language of 18 C.F.R. § 401.41(a)(1).

## COUNT II

### Violation of the Compact and its Regulations by Arbitrarily and Capriciously Finding No Material Change to the Project

87.    Plaintiffs hereby incorporate the allegations in paragraphs 1 through 86 as if fully stated herein.

88.    The Dock 2 Project has materially changed in several ways, including the modification of upland infrastructure, a change in the method of transloading LNG to rely entirely on trucks, and the plan to construct vast hard rock cavern networks.

89.    The Commission arbitrarily and capriciously concluded that there were no material changes to the project or the project site, in violation of 18 C.F.R § 401.41(a)(1)(i) & (ii).

## COUNT III

### Violation of the Compact and its Regulations by Arbitrarily and Capriciously Finding Diligent Pursuit of the Project

90.    Plaintiffs hereby incorporate the allegations in paragraphs 1 through 89 as if fully stated herein.

91.    DRP has not initiated construction of the Dock 2 Project, although it has the necessary authorizations to do so provided that it does not export LNG.

92.    DRP has admitted that market conditions and other factors have delayed construction.

93.    The Commission thus arbitrarily and capriciously concluded that DRP was diligently pursuing the project, in violation of 18 C.F.R. § 401.41(a)(1)(iv).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1. For a declaratory judgment that the Commission's September 10, 2025 extension of the Dock 2 Docket was contrary to the Compact and its Rules, arbitrary, capricious, or otherwise not in accordance with the law;

2. For injunctive relief enjoining Defendant DRP from taking any action authorized by the Dock 2 Docket until such time that the statutory and regulatory requirements under the Delaware River Basin Compact, Water Code, Water Quality Regulations, and Delaware River Basin Administrative Manual: Rules of Practice and Procedure are complied with in full;

3. For injunctive relief enjoining Defendant the Commission from permitting DRP to proceed with any action authorized by the Dock 2 Docket until such time that the Commission has fully complied with all statutory and

regulatory requirements under the Delaware River Basin Compact, Water Code, Water Quality Regulations, and Delaware River Basin Administrative Manual: Rules of Practice and Procedure;

4. For the Court to retain continuing jurisdiction to review Defendants' compliance with all judgments and orders entered herein;

5. For an award of Plaintiffs' costs of litigation, including reasonable attorney's fees; and

6. For such other and further relief as the Court may deem just and proper to effectuate a complete resolution of the legal disputes between Plaintiffs and Defendants.

Respectfully submitted this 10th day of October, 2025,

s/ Kacy C. Manahan
Kacy C. Manahan, Esq.
**Delaware Riverkeeper Network**
925 Canal Street #3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org

*Attorney for Plaintiffs Delaware Riverkeeper Network and Maya K. van Rossum, the Delaware Riverkeeper*