UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**DELAWARE RIVERKEEPER NETWORK, *et al.***,

*Plaintiffs*,

v.

**DELAWARE RIVER BASIN COMMISSION, *et al.***,

*Defendants*.

---

No. 25-cv-16551

**OPINION**

**APPEARANCES**:

**Kacy Cummings Manahan**
DELAWARE RIVERKEEPER NETWORK
925 Canal Street, Suite 3701
Bristol, PA 19007

*On behalf of Plaintiffs.*

**Naomi Mendelsohn**
DELAWARE RIVER BASIN COMMISSION
P.O. Box 7360
West Trenton, NJ 08628

**Kathleen B. Campbell**
**Michael Dillon**
MANKO, GOLD, KATCHER & FOX, LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004

*On behalf of Defendants.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on a Motion for Summary Judgment, (ECF No. 22), by Plaintiffs Delaware Riverkeeper Network and Maya van Rossum, Cross-Motion for Summary Judgment, (ECF No. 23), by Defendant Delaware River Basin Commission, and Cross-Motion for Summary Judgment, (ECF No. 24), by Defendant Delaware River Partners LLC. The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **DENIED**. Defendant Delaware River Partners LLC's Cross-Motion for Summary Judgment and Defendant Delaware River Basin Commission's Cross-Motion for Summary Judgment are **GRANTED.**

## I. FACTUAL BACKGROUND[1]

### A. The Delaware River Basin Compact and Commission

The Delaware River Basin Compact (the "Compact") is an agreement among the United States, New York, New Jersey, Pennsylvania, and Delaware to cooperatively manage the water resources of the Delaware River Basin. (Pls.' SOMF, ECF No. 22-1 at ¶ 6). To effectuate that goal, the Compact created the Delaware River Basin Commission (the "Commission" or "DRBC"), an interstate agency responsible for developing a "Comprehensive Plan" for the use and development of the Basin's water resources and reviewing proposed projects for consistency with that plan.

---

[1] The facts set forth herein are undisputed unless otherwise noted. Courts routinely disregard Statement of Material Facts ("SOMF") responses that fail to cite contrary evidence or improperly dispute facts without evidentiary support and deem those facts admitted. *See, e.g.*, *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 358–59 (D.N.J. 2013) (deeming facts admitted where plaintiff failed to meaningfully dispute them). To the extent Plaintiffs have failed to cite specific evidence in the record to dispute a SOMF set forth by Defendants, the Court deems it admitted for purposes of these Motions.

(Pls.' SOMF, ECF No. 22-1 at ¶¶ 7–9); *see also* Compact, § 13.1. The Commissioners are governors of the four basin states and the North Atlantic Division Commander of the U.S. Army Corps of Engineers ("USACE") on behalf of the federal government, all serving *ex officio*, and their appointed alternates. (Def. DRBC's Supp. SOMF, ECF No. 23-2 at ¶ 1). The Commission has a duty to review project proposals associated with the Delaware River Basin and to assess whether such projects comport with the goals of the Comprehensive Plan. (Pls.' SOMF, ECF No. 22-1 at ¶¶ 12–13). The Compact provides that:

> No project having a substantial effect on the water resources of the basin shall hereafter be undertaken by any person, corporation or governmental authority unless it shall have been first submitted to and approved by the commission. . . The commission shall approve a project whenever it finds and determines that such project would not substantially impair or conflict with the comprehensive plan and may modify and approve as modified, or may disapprove any such project whenever it finds and determines that the project would substantially impair or conflict with such plan. The commission shall provide by regulation for the procedure of submission, review and consideration of projects, and for its determinations pursuant to this section.

Compact, § 3.8. Section 3.8 of the Compact is implemented through the Commission's Rules of Practice and Procedure. 18 C.F.R. §§ 401.34, 401.35(b).

**B. The Delaware Riverkeeper Network**

Plaintiff Delaware Riverkeeper Network ("DRN") is a "not-for-profit membership organization established to protect and restore the Delaware River, its tributaries and habitats." (Pls.' SOMF, ECF No. 22-1 at ¶ 1). Plaintiff Maya van Rossum is the Delaware Riverkeeper and the chief executive of DRN. (*Id*. at ¶ 3).

**C. Delaware River Partners LLC**

Defendant Delaware River Partners LLC ("DRP") is a limited liability company formed under the laws of the state of Delaware. (Pls.' SOMF, ECF No. 22-1 at ¶ 5). In 2017, DRP applied

to the Commission for approval of the Gibbstown Logistics Center ("GLC"), a multi-use, deep-water seaport and industrial logistics center in Gibbstown, New Jersey, and the adjacent Dock 1 ("Dock 1/GLC Project"). (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶¶ 1–2; AR001–002).[2] The GLC Project involved the proposed redevelopment of about 218 acres of a former industrial property. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 4). The Commission unanimously approved the Dock 1/GLC Project on December 13, 2017. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 3; *see also* AR002).

On March 12, 2019, DRP submitted a new docket application to DRBC for approval to construct an additional dock at the GLC, downriver of Dock 1 (the "Dock 2 Project"). (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 5). The Dock 2 Project is a dredging and deep-water berth construction project designed to accommodate transloading of a range of bulk liquid products. (Pls.' SOMF, ECF No. 22-1 at ¶ 16; Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶¶ 10, 47).

After public notice and comment, the Commission issued Docket No. D-2017-009-2 (the "Dock 2 Docket") to DRP pursuant to Section 3.8 of the Compact on June 12, 2019. (Pls.' SOMF, ECF No. 22-1 at ¶ 18; Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶¶ 5–8). The Dock 2 Docket describes Dock 2 as "designed for the loading of bulk liquid products directly from railcar or truck onto ocean-going vessels for export and includes infrastructure for transloading operations." (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 9; *see also* AR002). The Dock 2 Docket provides that such products will arrive at the GLC "via truck and/or railcar." (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 48).

---

[2] Citations to the Administrative Record reference only the three terminal digits of the Bates number (i.e., AR2000570 is referenced as AR570).

**1. DRN's Challenges to Dock 2 Docket Issuance**

Following DRBC's issuance of the Dock 2 Docket, Plaintiffs requested an administrative hearing pursuant to Article 6 of the Commission's Rules. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 12). The Commission granted Plaintiffs' request and appointed an independent hearing officer. (*Id*. at ¶ 13). The Commission also provided a 55-day period for public comment. (*Id*. at ¶ 14). In May 2020, the independent hearing officer presided over an eight-day administrative hearing. (*Id*. at ¶ 15). The parties offered evidence in the form of documents and testimony, including the testimony of thirteen expert witnesses, three fact witnesses, and more than 200 exhibits. (*Id*. at ¶ 15). On July 21, 2020, the hearing officer issued a Report of Findings and Recommendations, concluding that the Docket should "remain as previously approved by the Commission." (*Id*. at ¶ 16 (citing AR011)). Parties to the administrative proceeding—including Plaintiffs—had the opportunity to serve objections to the report and responses to comments made by the Commission's staff regarding the report. (*Id*. at ¶ 17). The Commission subsequently adopted a Resolution concluding that the Dock 2 project as conditioned in the Docket would not substantially impair or conflict with the Commission's Comprehensive Plan. (*Id*. at ¶ 18 (citing AR011)). The Commission adopted the findings and recommendations of the hearing officer and issued an opinion explaining its reasoning. (*Id*. at ¶ 20; *see also* AR010–012). Further, the Commission determined that:

> DRN has failed to meet its burden of demonstrating either that the Dock 2 project as conditioned in the Docket would substantially impair or conflict with the Comprehensive Plan or that the administrative record for the Docket contains insufficient information to support the Docket Approval.

(Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 19 (citing AR011)).

On January 25, 2021, Plaintiffs filed a complaint in this District challenging the

Commission's issuance of the Dock 2 Docket. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 21; *see also* Compl., *Del. Riverkeeper Network v. Del. River Basin Comm'n*, No. 21-cv-01108 (D.N.J. Jan. 25, 2021)). Plaintiffs filed a motion for summary judgment, and Defendants DRP and DRBC filed cross-motions for summary judgment. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 22). On March 31, 2023, the Court issued an Opinion and Order granting summary judgment in favor of DRP and DRBC. *See Del. Riverkeeper Network v. Del. River Basin Comm'n*, No. 21-cv-01108, 2023 WL 2728802 (D.N.J. Mar. 31, 2023).

**2. Permits**

After the Dock 2 Docket issuance, DRP sought to acquire various required permits at the state and federal level. DRN has challenged several of those permits.

**a. Permits related to Liquefied Natural Gas Transportation by Rail**

Liquefied natural gas ("LNG") can be transported by pipeline, truck, or rail. Historically, shipping LNG by rail has been authorized on "an ad hoc basis by special permit or approval." *See*

*Sierra Club v. U.S. Dep't of Trans.*, 125 F.4th 1170, 1175 (D.C. Cir. 2025).[3] Energy Transport Solutions, LLC acquired such a special permit from the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), allowing for the transportation of LNG by rail from Wyalusing, Pennsylvania, to Gibbstown, New Jersey. (Pls.' SOMF, ECF No. 22-1 at ¶ 24). On November 30, 2021, that permit expired by its terms. (*Id.*). On December 30, 2021, the NJDEP issued DRP a permit for the construction of 11,600 linear feet of double-track rail loop. (*Id*. at ¶ 25). Energy Transport Solutions, LLC applied for renewal of the permit to transport LNG by rail, but the application was denied by PHMSA on or about April 24, 2023. (*Id*. at ¶ 26).

**b. Permits related to Underground Storage Caverns**

In 2023, following public notice and comment, DRBC and the New Jersey Department of Environmental Protection ("NJDEP") executed an Administrative Agreement designating NJDEP as the lead reviewing agency for underground storage caverns. (Def. DRBC's Supp. SOMF, ECF No. 23-2 at ¶¶ 5–6 (citing AR192)). The Commission provides input to NJDEP during the

---

[3] LNG transport by rail has been the subject of controversy and significant regulatory turbulence since the inception of the Dock 2 Docket. In 2020, the Pipeline and Hazardous Materials Safety Administration endeavored to create a rule to broadly permit transport of LNG by rail pursuant to a directive by Executive Order. *See* Exec. Order No. 13868, 84 Fed. Reg. 15495 (Apr. 10, 2019). The final rule allowed for the transport of LNG in certain rail cars. *See* Hazardous Materials: Liquefied Natural Gas by Rail, 85 Fed. Reg. 44994 (July 24, 2020). The final rule was challenged by several environmental groups, states, and tribes. *See Sierra Club v. U.S. Dep't of Trans.*, 125 F.4th 1170, 1175 (D.C. Cir. 2025). In September 2023, during the pendency of litigation, PHMSA suspended authorization of LNG transportation in rail tank cars pursuant to the final rule. (Pls.' SOMF, ECF No. 22-1 at ¶ 27; *see also* AR760). On June 23, 2025, PHMSA amended its regulations in light of the D.C. Circuit's decision and restored the text of the Hazardous Material Regulations as they existed prior to the LNG Rail Rule. (Pls.' SOMF, ECF No. 22-1 at ¶ 31–32); *see also* Hazardous Materials: Liquefied Natural Gas by Rail, 90 Fed. Reg. 26455, 26455 (June 23, 2025) ("These conforming amendments are intended to restore the text of the [Hazardous Materials Regulations] to the version that existed prior to the effective date of the LNG by Rail Rule. No other regulatory changes are being adopted.").

permitting process but does not independently issue a separate docket for such projects. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 56). On April 16, 2025, NJDEP posted a public notice and draft permit that would allow DRP to construct two new 640,000-barrel hard rock underground storage cavern systems. (Pls.' SOMF, ECF No. 22-1 at ¶ 33). Plaintiffs provided written and oral comments to NJDEP on the draft permit. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 58). On October 16, 2025, NJDEP issued a final permit to DRP authorizing the construction of the underground storage caverns. (Pls.' SOMF, ECF No. 22-1 at ¶ 34; Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 59). Plaintiffs did not appeal NJDEP's issuance of the storage-cavern permit. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 61). As permitted by NJDEP, the underground storage caverns will be constructed on the upland portion of the GLC, in an area not affected by the construction of Dock 2. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 63). NJDEP regulations prohibit storage of LNG in underground storage caverns, and the Dock 2 Docket represents that LNG will not be stored at the GLC site. (Def. DRBC's Supp. SOMF, ECF No. 23-2 at ¶¶ 3–4 (citing N.J. ADMIN. CODE § 7:1F-1.4(e))).

#### c. USACE Permit and FERC Petition

On March 6, 2019, DRP applied to the USACE for a permit to construct the Dock 2 Project pursuant to Section 10 of the Rivers and Harbors Act of 1899 and Section 404 of the Clean Water Act ("USACE Permit"). (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 23 (citing AR250–285)). The USACE approved the permit on February 28, 2020. (AR250–285). On April 22, 2020, Plaintiffs filed a complaint with this Court challenging the USACE Permit under the Administrative Procedure Act. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 25 (citing Compl., *Del. Riverkeeper Network v. U.S. Army Corps. of Engineers*, No. 20-cv-04824 (D.N.J. Apr. 22,

2020)). DRP is an intervenor-defendant in the case. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 38).

Separately, on September 11, 2020, DRP filed a petition for a declaratory order requesting that the Federal Energy Regulatory Commission ("FERC") disclaim jurisdiction over proposed future LNG transloading operations at its GLC facility. (Pls.' SOMF, ECF No. 22-1 at ¶ 23). On November 18, 2020, the federal defendants advised the Court that DRP had petitioned FERC for a jurisdictional determination and that FERC's decision could affect the Court's jurisdiction. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 26; *see also* Ltr. from Defs., *Del. Riverkeeper Network v. U.S. Army Corps. of Engineers*, No. 20-cv-04824 (D.N.J. Nov. 18, 2020) ("[S]hould FERC conclude that it has jurisdiction—and depending on the nature of FERC's reasoning—it could raise a question under 15 U.S.C. § 717r(d) as to district court jurisdiction over the complaint before this Court."). On June 7, 2021, the Court vacated the summary judgment briefing schedule pending that determination. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 28). On May 31, 2022, the Court ordered that the case be administratively terminated pending FERC's determination on whether it would assert jurisdiction. (*Id*. at ¶¶ 29–30).

In the FERC proceedings, on April 18, 2024, FERC asked DRP whether it still intended to construct and operate the Gibbstown facility given that LNG could no longer be transported by rail. (Pls.' SOMF, ECF No. 22-1 at ¶ 28; *see also* AR755). DRP responded that it intended to construct the Dock 2 Project because it could use various modes of delivery by truck to transload LNG onto ocean-going vessels. (Pls.' SOMF, ECF No. 22-1 at ¶ 29; *see also* AR760). Plaintiffs submitted comments, noting that, according to Plaintiffs' calculations, 218,182 trucks would need to travel from Wyalusing to Gibbstown daily to export the average daily volume of LNG

authorized by the Department of Energy ("DOE"). (Pls.' SOMF, ECF No. 22-1 at ¶ 30; *see also* AR767).

#### d. Other Permits

DRP also obtained a Waterfront Development Permit from the NJDEP. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 23). Plaintiffs challenged the permit in state court, but the New Jersey Appellate Division rejected their challenge, and the New Jersey Supreme Court denied certification. *See In the Matter of Challenge of Del. Riverkeeper Network*, No. A-0709-19, 2021 WL 2562541 (N.J. Super. Ct. App. Div. June 23, 2021), *cert. denied*, 249 N.J. 459 (Jan. 14, 2022).

### 3. Docket Extensions to the Dock 2 Docket

In June 2022, following the administrative termination of the litigation concerning the USACE Permit the previous month, DRP sought a three-year extension of the Dock 2 Docket authorization (hereinafter, "First Extension"). (Pls.' SOMF, ECF No. 22-1 at ¶ 20). DRP supplied evidence to demonstrate that it had expended nearly $1.8 million in support of the Dock 2 Project since Docket issuance. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 32; *see also* AR092). Plaintiffs submitted comments in opposition to the extension request. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 33). In September 2022, DRBC granted DRP's requested extension through June 12, 2025. (Pls.' SOMF, ECF No. 22-1 at ¶ 21). Plaintiffs did not appeal that extension. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 35).

At the time the Commission issued the Dock 2 Docket and the First Extension, the Commission's Rules of Practice and Procedure ("Rules") provided that docket approvals expire three years from the approval date. (Pls.' SOMF, ECF No. 22-1 at ¶ 14 (citing 18 C.F.R. § 401.41(a) (2023)). The Commission thereafter amended its Rules, effective July 22,

2024, to provide that approvals pursuant to Section 3.8 without an assigned expiration date would expire five years after approval unless the Commission extended the approval for an additional period of up to five years. (Pls.' SOMF, ECF No. 22-1 at ¶ 15 (citing 18 C.F.R. § 401.41(a)). Under the amended rules, a project sponsor seeking extension of its docket must demonstrate that it meets four criteria:

> (i) No material changes to the project as approved are proposed;
>
> (ii) The condition of the project site has not changed in a manner important to determining whether the project would substantially impair or conflict with the Commission's Comprehensive Plan;
>
> (iii) The Commission's Comprehensive Plan has not changed in a manner important to determining whether the project would substantially impair or conflict with the Comprehensive Plan; and
>
> (iv) The project sponsor is diligently pursuing the project as shown by its planning, construction or project operational activities, its project expenditures, its efforts to secure government approvals necessary for the project, or its active participation in appeals of government decisions on its applications for government approvals. The project sponsor is not required by this paragraph (a)(1)(iv) to conduct activities that it is not legally authorized to conduct or that it demonstrates would be unreasonable for it to conduct before obtaining all necessary final government approvals.

18 C.F.R. § 401.41(a)(1).

On March 14, 2025, DRP submitted a second request for an extension of the Dock 2 Docket, stating that the Dock 2 Project had "no substantial material changes" and the "condition of the project has not changed in a manner that would impact the project's conformance with the Commission's Comprehensive Plan." (Pls.' SOMF, ECF No. 22-1 at ¶¶ 35–37; *see also* AR167–68). DRP noted that it had "diligently been pursuing the project" but "due to market conditions and other factors, construction [had] been delayed." (Pls.' SOMF, ECF No. 22-1 at ¶ 38; *see also* AR167–68). DRP further submitted that it had "secured all government approvals" necessary for

the project and that "[s]ignificant expenditures" had been made to secure and extend those approvals. (Pls.' SOMF, ECF No. 22-1 at ¶ 39; *see also* AR167–68). On March 20, 2025, Ramboll Americas Engineering Solutions, Inc. ("Ramboll") submitted a spreadsheet identifying more than $8 million in total expenditures that DRP had made in support of the Dock 2 Project. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 41).

Plaintiffs submitted comments to the Commission requesting denial of DRP's extension request, arguing that (1) the Commission's Rules only allow for a single extension of a docket; (2) the Dock 2 Project materially changed in a manner important to determining whether it would substantially impair or conflict with the Comprehensive Plan because (a) the changes to PHMSA's regulations required the Project to rely solely on trucks to transload LNG instead of the originally proposed combination of trucks and rail; (b) NJDEP was considering a permit application for construction of underground caverns to store LPG; and (3) DRP was not diligently pursuing the Dock 2 Project despite having all the necessary approvals, in violation of 18 C.F.R. § 401.41(a)(1). (Pls.' SOMF, ECF No. 22-1 at ¶¶ 40–44; *see also* AR691–96). On May 16, 2025, DRP submitted a letter to the Commission responding to Plaintiffs' comments and elaborating on the reasons DRP satisfied the regulatory criteria for a docket extension, including discussion of Plaintiffs' pending legal challenge to DRP's USACE permit. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶ 46; *see also* AR176–82).

On September 10, 2025, the Commission adopted a Resolution approving an extension of the Dock 2 Docket through June 12, 2030. (Pls.' SOMF, ECF No. 22-1 at ¶ 45). The Resolution incorporated by reference a 19-page Response to Comments in which the Commission addressed Plaintiffs' and others' comments on DRP's extension request. (Def. DRP's Supp. SOMF, ECF No.

24-2 at ¶ 65). In its Resolution, DRBC found that DRP satisfied the four criteria set forth in 18 C.F.R. § 401.41(a)(1) to warrant extension. (Def. DRP's Supp. SOMF, ECF No. 24-2 at ¶¶ 66–68).

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint on October 10, 2025. (Compl., ECF No. 1). Plaintiffs moved for summary judgment on March 6, 2026. (ECF No. 22). Defendant Delaware River Basin Commission filed its cross-motion for summary judgment on April 15, 2026. (ECF No. 23). Defendant Delaware River Partners LLC filed its cross-motion for summary judgment that same day. (ECF No. 24).

## III. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Compact, which states that "[t]he United States district courts shall have original jurisdiction of all cases or controversies arising under the Compact." Compact, § 15.1(p).

## IV. LEGAL STANDARD

The Compact provides that any determination of the Commission shall be subject to judicial review. Compact, § 3.8. Hearing participants may also appeal any final Commission action. 18 C.F.R. § 401.90. However, neither the Compact nor the Rules provide for a standard of review for courts to apply. Though this case is before this Court on a motion and cross-motions for summary judgment, the summary judgment consideration of whether there is a genuine issue of material fact "is not a perfect fit when the motions seek review of administrative decisions." *N.G. v. N. Valley Reg'l High Sch. Bd. of Educ.*, No. 15-4419, 2017 WL 5515913, at *5 (D.N.J. Mar. 31, 2017) (citing Fed. R. Civ. P. 56(a)). When no new evidence is presented, as in the instant

case, "summary judgment motions are 'simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *Id.* (citing *M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002)). In such instances, because "a party seeks review of agency action under the [Administrative Procedure Act ("APA")]. . . the district judge sits as an appellate tribunal." *Neto v. Thompson*, 506 F. Supp. 3d 239, 243–44 (D.N.J. 2020) (internal citation omitted).

The Commission is not a federal agency, and, as such, is not subject to the APA. *See* Compact, § 15.1(m). However, in evaluating the Commission's decisions, courts employ similar standards of review as in review of federal agency decisions: the "arbitrary and capricious" standard or the "substantial evidence standard." *See, e.g.*, *Delaware Water Emergency Grp. v. Hansler*, 536 F. Supp. 26, 36–40 (E.D. Pa. 1981), *aff'd*, 681 F.2d 805 (3d Cir. 1982); *Delaware Riverkeeper Network v. Delaware River Basin Comm'n*, No. 21-cv-01108, 2023 WL 2728802 (D.N.J. Mar. 31, 2023) (applying the "substantial evidence" test where DRBC's action was "based

on a public adjudicatory hearing.").[4] Plaintiffs and Defendant DRBC agree that the appropriate standard is whether the Commission's conclusion was "arbitrary and capricious, or unsupported by substantial evidence on the record." (*See* Pls.' Br. in Supp. of Mot. for Summ. J. (hereinafter "Pls.' Br."), ECF No. 22-2 at 4; Def.'s Mem. of L. in Opp. to Pls.' Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. (hereinafter "Def. DRBC's Br."), ECF No. 23-1 at 9–10). DRP argues the arbitrary and capricious standard is appropriate to apply in this case but acknowledges that the two standards are "substantially identical." (Def.'s Br. in Supp. of Def.'s Cross-Mot. for Summ. J. and in Opp. to Pls.' Mot. for Summ. J. (hereinafter "Def. DRP's Br."), ECF No. 24-1 at 9 n.3). Accordingly, the Court reviews this case pursuant to the arbitrary and capricious standard.

## V. **DISCUSSION**

Plaintiffs challenge the Commission's decision to extend the Dock 2 Docket on three grounds. First, they contend that the Commission lacked authority to grant a second extension under 18 C.F.R. § 401.41. (Pls.' Br. at 8–12). Second, they argue that the Commission arbitrarily

---

[4] The distinction between the "substantial evidence" and "arbitrary and capricious" review standards is the subject of debate and volumes of scholarship. *See, e.g.*, Matthew J. McGrath, *Convergence of the Substantial Evidence and Arbitrary and Capricious Standards of Review During Informal Rulemaking*, 54 GEO. WASH. L. REV. 541 (1985-1986). In *Association of Data Processing Service Organizations, Inc. v. Board of Governors of the Federal Reserve System*, then-Judge Scalia wrote that "the distinction between the substantial evidence test and the arbitrary or capricious test is largely semantic." 745 F.2d 677, 684 (D.C. Cir. 1984) (internal citation omitted). "When the arbitrary or capricious standard is performing [the] function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense." *Id.* at 683–84 (emphasis in original). In any case, "[m]any, if not most cases, that have been confronted with a choice between applying an 'arbitrary and capricious' and a 'substantial evidence' standard of review of agency action have neatly side-stepped the issue by ruling that the same result would obtain under the facts of the case being decided, under either test." *Delaware Water Emergency Grp. v. Hansler*, 536 F. Supp. 26, 39 (E.D. Pa. 1981), *aff'd*, 681 F.2d 805 (3d Cir. 1982).

determined that there were no material changes to the Project or project site. (*Id*. at 12–18). Third, they contend that the Commission improperly concluded that DRP was diligently pursuing the Project. (*Id*. at 18–20). For the reasons set forth below, the Court finds that the Commission acted within its regulatory authority and reasonably determined, based on the administrative record, that the requirements for an extension were satisfied.

**A. The Commission Had Authority to Grant a Second Extension**

Plaintiffs argue that the Commission's decision to grant Defendant DRP a second extension of the Dock 2 Docket for the Dock 2 Project was arbitrary and capricious because the Commission's regulations provide for only a single extension of the docket. (Pls.' Br. at 8–12). Defendant DRBC argues that 18 C.F.R. § 401.41(a) speaks only to the maximum length of an extension, not the number of possible extensions, and that a contrary reading would controvert the purpose of the regulation, which is to avoid unnecessarily duplicative administrative proceedings. (Def. DRBC's Br. at 12–19). Defendant DRP similarly argues that the Commission reasonably interpreted 18 C.F.R. § 401.41(a) in extending the Dock 2 Docket because the regulation contains no prohibition on multiple extensions and the Commission's interpretation of its own regulation warrants deference. (Def. DRP's Br. at 11–22).

Section 401.41(a)(1) permits the Commission to extend a docket approval without requiring the project sponsor to obtain an entirely new approval, provided the regulatory criteria are satisfied. 18 C.F.R. § 401.41(a)(1). The plain text of the regulation does not limit the number of extensions allowed. Where regulators intend to restrict the number of permissible extensions, they may do so expressly. *See, e.g.*, N.J. Admin. Code § 7:7-8.2 ("[A]n individual permit for any activity waterward of the mean high water line is valid for five years from the date of issuance,

and may be extended **<u>one time for five years</u>**….") (emphasis added). While this is a state regulation, it is important to the instant analysis because the Commission specifically cited this NJDEP regulation in its Response to Comments on the proposed amendments. (AR386, n.14). Thus, the Commission was aware of analogous provisions which contained limitations on the number of extensions. If the Commission intended to limit the number of extensions, it presumably would have done so explicitly.

Plaintiffs' interpretation rests principally on the regulation's reference to "an additional period of up to five years." (Pls.' Br. at 8–12). But that language describes the duration of an extension the Commission may grant; it does not expressly limit the number of times the Commission may exercise its extension authority. Nothing in the quoted language provides that an approval may be extended only once or that a docket must expire permanently at the conclusion of its first extension. Moreover, each extension remains subject to the regulatory criteria, including the requirement that the sponsor demonstrate diligent pursuit of the Project. Thus, the Commission's authority to grant successive extensions does not eliminate the substantive limitations governing their approval. Furthermore, and perhaps most importantly, the Commission explicitly addressed this issue in its Response to Comments in the Dock 2 Docket Extension administrative proceedings, writing that "[i]mposing a limitation of this kind would have been a noteworthy change that the Commission would have called out in the Preamble to the proposed amendments if this were intended. The Commission did not call it out. . . because it did not intend

such a change." (AR188).[5]

The Court is likewise unpersuaded by Plaintiffs' argument that § 401.41(a) permits only a single extension because the regulation was intended to serve as a "backstop" for projects that are not promptly undertaken. (Pls.' Br. at 11). Although the Commission described the regulation as a "backstop" in its notice of proposed rulemaking, (AR330), the regulation serves that purpose by requiring project sponsors to demonstrate that they have diligently pursued their projects and that no material changes have occurred warranting renewed review. 18 C.F.R. § 401.41(a)(1)(i)–(iv). These requirements apply to each requested extension, thereby preventing the indefinite continuation of approvals where the regulatory criteria are no longer satisfied. Where those requirements are not satisfied, the project sponsor must seek renewal through the customary application process. 18 C.F.R. § 401.41(a)(2), (b). Accordingly, the Court declines to read into the regulation a limitation on the number of permissible extensions that its text does not impose.

**B. The Commission Reasonably Determined That No Material Changes Had Occurred**

Under § 401.41(a)(1), a party seeking a docket extension must show that there have been no material changes to the approved project as proposed and that the condition of the project site has not changed in a manner important to determining whether the project would substantially

---

[5] Because the Court concludes that the plain language of § 401.41(a) does not prohibit successive extensions, it need not determine whether the Commission's interpretation of its regulation warrants deference. *See Kisor v. Wilkie*, 588 U.S. 558, 573–75 (2019) (explaining that courts must exhaust the traditional tools of regulatory construction, including consideration of the regulation's text, structure, history, and purpose, before resorting to deference to an agency's interpretation). Because the regulation's plain language is unambiguous, there is no occasion to consider whether the Commission's interpretation is otherwise entitled to deference.

impair or conflict with the Commission's Comprehensive Plan. 18 C.F.R. § 401.41(a)(1)(i)–(ii). Plaintiffs argue that the Commission's finding that there were "no material changes" to the Dock 2 Project or the site was arbitrary and capricious because the project changed in two significant ways: (1) all LNG transloading will now need to occur by truck and (2) GLC will now store liquefied petroleum gas ("LPG") in underground caverns on site. (Pls.' Br. at 12–18). Defendant DRBC argues that neither of these developments constitutes a material change to the dredging and deep-water construction activities authorized by the Dock 2 Docket. (Def. DRBC's Br. at 19–27). Defendant DRP similarly argues that the Commission's decision was supported by the administrative record. (Def. DRP's Br. at 22–33). The Court agrees with Defendants and finds that the administrative record supports the Commission's finding that there were no material changes to the Dock 2 Project.

*1. The Changes to LNG Transportation by Rail Did Not Materially Alter the Approved Project*

The originally approved Docket described Dock 2 as "designed for the loading of bulk liquid products directly from ***railcar or truck*** onto oceangoing vessels for export." (AR002 (emphasis added)). The Docket further elaborated that "[t]he products will arrive at the site via ***truck and/or railcar***." (AR003 (emphasis added)). Plaintiffs contend that the subsequent changes to PHMSA's regulations have now eliminated rail transportation as an available method for delivering LNG to the GLC, thereby requiring only the use of trucks. (Pls.' Br. at 13). DRBC expressly considered this issue in Response to Comments on the Dock 2 Docket, writing that the "Docket recognized that both truck and rail transport were contemplated." (AR193). Indeed, the original approval did not require LNG to be transported by both rail and truck; rather, it expressly contemplated delivery by either method.

Plaintiffs nevertheless argue that reliance exclusively on truck transportation constitutes a material change because it will substantially increase the volume of truck traffic associated with the Project and the attendant environmental risks. (Pls.' Br. at 14–15). However, the relevant inquiry under § 401.41(a)(1)(i) is whether there have been material changes to the Project as approved, not whether the possible transportation methods contemplated by the original approval have become more or less feasible. The Dock 2 Docket authorized dredging and in-water construction activities necessary for the development of two deep-water berths. (AR002–04). Although the Docket contemplated the transportation of LNG and other bulk liquid products by truck or rail, the Commission explained that the transportation of those products was separate from the dredging and construction activities authorized by the Docket. (AR193 ("[W]hile the Docket recognized that both truck and rail transport were contemplated, the activities the Commission reviewed and authorized by the Docket consisted of dredging and in-water construction activities."). Thus, the elimination of rail transportation as an available option did not alter the scope of the activities the Commission had approved.

Nor did the Commission disregard Plaintiffs' concerns regarding increased truck traffic and associated environmental risks. In its Response to Comments, the Commission explained that the transportation of LNG by truck implicates matters generally outside the scope of the water-resource management activities addressed by its Comprehensive Plan. (AR193, 196). To the extent Plaintiffs raised concerns regarding potential impacts on water resources, the Commission explained that it had previously considered those risks in approving the Dock 2 Project and that the comments did not identify new information warranting reconsideration of its prior findings. (AR196–97). Accordingly, the Commission reasonably concluded that the changes in the

availability of rail transportation did not constitute a material change to the approved Project or otherwise require reconsideration of its prior determination that the Project would not substantially impair or conflict with the Comprehensive Plan.

*2. The Proposed Underground Storage Caverns Did Not Constitute a Material Change*

DRBC also expressly considered the Underground Storage Caverns ("USCs") in its Response to Comments. (AR191–92). DRBC noted that the USCs are reviewed under DRBC's one permit program, which designates NJDEP as the lead reviewer for such projects. (AR192). The Commission does not independently regulate underground storage caverns; rather, NJDEP serves as the lead reviewing agency under the agencies' one permit program. (*Id.*). The proposal for the USCs was reviewed under § 3.8 of the Compact in a proceeding distinct from the Dock 2 Docket before NJDEP. (*Id.*). NJDEP then issued the permit for the caverns in October 2025. *See* New Jersey Dep't of Env't Protection, Permit to Construct Two New Underground Storage Cavern Systems Including Central Complex, Permit App. No. CAV230001, available at https://dep.nj.gov/wp-content/uploads/brp/caverns/usc-public-notices/usc-drp-permit-to-construct-10.16.25c.pdf.

Plaintiffs argue that the Commission was required to consider the cumulative impacts of the proposed caverns and Dock 2 to determine whether the Project continued to comply with the Comprehensive Plan. (Pls.' Br. at 16–18). However, the Commission did not conclude that the USCs were categorically exempt from review under the Compact. Rather, the Commission explained that the Compact permits it to evaluate separately identifiable components of a larger development as distinct projects. (AR192). Indeed, the Compact defines a "project" to include activities that are separately planned, financed, or identified by the Commission and that may be

evaluated independently or as additions to an existing facility. Compact § 1.2(g). The Commission reasonably relied on this distinction because the Dock 2 Docket primarily authorized dredging and construction activities within the Delaware River, whereas the proposed USCs would be constructed on the upland portion of the Gibbstown Logistics Center, outside the area covered by the Dock 2 approval, to add to storage caverns already present. (AR192).

Even so, in response to DRN's comments raising this issue during the Dock 2 Docket Extension proceedings, DRBC wrote that "[t]he Commission is also confident that NJDEP's detailed regulations governing construction and operation of storage caverns are protective of groundwater." (AR193).

In light of the separate scope of the approved activities, the Commission's consideration of the proposed caverns and their separate regulatory review, and the availability of independent review under § 3.8, the Court finds that the Commission reasonably determined that the proposed caverns did not constitute a material change to the project as approved requiring reconsideration of the Dock 2 Docket.[6]

---

[6] The Court further finds that there has been no material change to the condition of the project site within the meaning of 18 C.F.R. § 401.41(a)(1)(ii). Although Plaintiffs identify the proposed underground storage caverns as a change to the broader GLC property, they have not identified evidence demonstrating that the condition of the Dock 2 Project site has changed in a manner important to determining whether the Project would substantially impair or conflict with the Commission's Comprehensive Plan.

### C. The Commission Reasonably Determined That DRP Was Diligently Pursuing the Project

Plaintiffs argue that the Commission's finding that DRP had "diligently pursued" the Dock 2 Project was arbitrary and capricious because the Dock 2 Project "has not advanced towards construction or operation despite DRP obtaining the necessary government approvals." (Pls.' Br. at 18). Plaintiffs rely almost entirely on a single statement by DRP's engineering consultant, Ramboll, noting that construction of the Dock 2 Project had been delayed due to "market conditions and other factors." (Pls.' Br. at 19 (quoting AR168)). Plaintiffs argue that a delay based on market factors undercuts DRP's claim of diligent pursuit. (Pls.' Br. at 19–20). Defendant DRBC argues that Plaintiffs' efforts to delay the Dock 2 Project through serial litigation undermine their arguments. (Def. DRBC's Br. at 27–30). Defendant DRP argues that it demonstrated diligent pursuit through its significant expenditures, active pursuit of government approvals, and participation in litigation related to the USACE permit. (Def. DRP's Br. at 34–37).

A project sponsor can establish diligent efforts through a number of activities, including planning, efforts to secure government approvals, and participation in appeals of government decisions on its applications. 18 C.F.R. § 401.41(a)(1)(iv). Here, DRP averred that it had expended $8 million in support of the Project. (AR239). Additionally, the instant case is just the latest among DRN's legal challenges to the Dock 2 Project. Plaintiffs have repeatedly challenged approvals associated with the Dock 2 Project. (Def. DRBC's Supp. SOMF, ECF No. 23-2 at ¶ 9 (citing *In the Matter of Challenge of Delaware Riverkeeper Network*, No. A-0709-19, 2021 WL 2562541 (N.J. Super. Ct. App. Div. June 23, 2021); Compl., *Del. Riverkeeper Network v. U.S. Army Corps. of Engineers*, No. 20-cv-04824 (D.N.J. Apr. 22, 2020); *In the Matter of Permit Number 0807-21-0002.1*, Nos. A-1987-21, A-2720-21, 2023 WL 8069486 (N.J. Super. Ct. App. Div. Nov. 21,

2023)). The parties have been involved in extensive litigation concerning the approvals necessary for the Dock 2 Project for several years, which the Commission reasonably considered in assessing DRP's efforts to advance the Project. As the Commission cogently explained, "until all legal challenges to its approvals are resolved, DRP cannot reasonably be expected to engage in activities or incur expenses for the Dock 2 Project other than those associated with renewing, extending or defending its key approvals." (AR195).

Although Plaintiffs emphasize that DRP has not commenced construction and has attributed certain delays to market conditions, § 401.41(a)(1)(iv) does not require a project sponsor to demonstrate diligence exclusively through physical construction. Plaintiffs' reliance on a single statement in Ramboll's engineering report attributing construction delays to "market conditions and other factors," (AR168), reflects an unduly narrow view of the administrative record and fails to account for the substantial evidence of DRP's continued efforts to advance the Project through expenditures, pursuit of necessary approvals, and participation in related litigation. The regulation expressly identifies project expenditures, efforts to obtain necessary government approvals, and active participation in appeals of government decisions as evidence of diligent pursuit. Here, the Commission considered DRP's documented expenditures and continued efforts to obtain and defend the approvals necessary for the Dock 2 Project. Accordingly, the Commission had a reasonable basis to conclude that DRP continued to pursue the Project through activities expressly contemplated by the regulation.

## VI. CONCLUSION

For these reasons, the Court finds that the Commission's decision to extend the Dock 2 Docket was not arbitrary or capricious. Accordingly, Plaintiffs' Motion for Summary Judgment,

(ECF No. 22), is **DENIED**, and Defendants' Cross-Motions for Summary Judgment, (ECF Nos. 23, 24), are **GRANTED**. An appropriate Order accompanies this Opinion.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**